UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60386-CIV-ALTMAN/Brannon

TIMOTHY CARNAHAN and
CYIOS CORPORATION,

    *Plaintiffs*,

v.

SECURITIES AND EXCHANGE COMMISSION,

    *Defendant*.

_____/

## ORDER

A "federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises." *Fitzgerald v. Seaboard Sys. R.R., Inc.*, 760 F.2d 1249, 1251 (11th Cir. 1985) (citations omitted). It is the Court's responsibility, therefore, to "zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001). Indeed, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court *must* dismiss the action." FED. R. CIV. P. 12(h)(3) (emphasis added); *see also Boone v. Sec'y, Dep't Of Corr.*, 377 F.3d 1315, 1316 (11th Cir. 2004) (affirming district court's *sua sponte* dismissal for lack of subject-matter jurisdiction).

## THE FACTS

The Plaintiff, Timothy Carnahan, owns CYIOS Corporation ("CYIOS"), which is also a Plaintiff. Compl. ¶ 11. CYIOS sells a computer program called CTIPRO, which "provides a virtual

workspace for collaboration . . . [that] captures all financials of all transactions." *Id.* ¶ 12. Carnahan began using CYIPRO to meet "SEC ICFR requirements" in 1999. *Id.* ¶ 13. "While using the software . . . every SEC 10k CYIOS filed with the sec.gov was audited and paid by an external audit company . . . [and] CYIOS NEVER received any deficiencies or material weaknesses from an audit." *Id.*

In June of 2014, the Defendant, the Securities and Exchange Commission (the "SEC"), "started an investigation and stated that plaintiff's use of computer software 'CYIPRO' for ICFR . . . is false on the all filed 10K CYIOS reports." *Id.* ¶ 14. In response, Carnahan contacted the SEC and, within just a few days, submitted proof that the software is, in fact, ISO complaint. *See id.* ¶¶ 15–16.

The parties were still discussing the matter when, on February 13, 2015, the SEC filed an Order Instituting Administrative and Cease-and-Desist Proceedings. *See id.* ¶ 17. Then, on December 21, 2015, the SEC released its Initial Decision and, in part, dismissed the violations. *See id.* ¶ 18. Carnahan appealed on February 2, 2016. *See id.*

On November 29, 2017, the SEC vacated its Initial Decision and, on December 7, 2017, remanded the case to the Administrative Law Judge ("the "ALJ") for a new hearing. *See id.* ¶¶ 21-22. The ALJ issued its Second Initial Decision on January 10, 2020. *See id.* ¶ 23.

The Plaintiffs "have the right to petition the SEC Commission for a review of this ID." *Id.* But, rather than pursue that administrative remedy, they chose to file this lawsuit.

**THE LAW**

> The SEC has statutory authority to enforce the nation's securities laws. One way it can do so is by instituting an administrative proceeding against an alleged wrongdoer. By law, the Commission may itself preside over such a proceeding. *See* 17 C.F.R. § 201.110 (2017). But the Commission also may, and typically does, delegate that task to an ALJ. See *ibid.*; 15 U.S.C. § 78d–1(a). The SEC currently

has five ALJs. Other staff members, rather than the Commission proper, selected them all. *See* App. to Pet. for Cert. 295a–297a.

An ALJ assigned to hear an SEC enforcement action has extensive powers—the "authority to do all things necessary and appropriate to discharge his or her duties" and ensure a "fair and orderly" adversarial proceeding. §§ 201.111, 200.14(a). Those powers "include, but are not limited to," supervising discovery; issuing, revoking, or modifying subpoenas; deciding motions; ruling on the admissibility of evidence; administering oaths; hearing and examining witnesses; generally "[r]egulating the course of" the proceeding and the "conduct of the parties and their counsel"; and imposing sanctions for "[c]ontemptuous conduct" or violations of procedural requirements. §§ 201.111, 201.180; *see* §§ 200.14(a), 201.230. As that list suggests, an SEC ALJ exercises authority "comparable to" that of a federal district judge conducting a bench trial. *Butz v. Economou*, 438 U.S. 478, 513, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

After a hearing ends, the ALJ issues an "initial decision." § 201.360(a)(1). That decision must set out "findings and conclusions" about all "material issues of fact [and] law"; it also must include the "appropriate order, sanction, relief, or denial thereof." § 201.360(b).

*Lucia v. S.E.C.*, 138 S. Ct. 2044, 2049 (2018).

After the ALJ issues its initial decision,

[e]ither party may appeal the initial decision to the Commission, *id.* § 201.410, or the Commission may review it on its own initiative. *Id.* § 201.411(c). The Commission's review authority is broad. "[It] may affirm, reverse, modify, set aside or remand for further proceedings, in whole or in part, an initial decision by a hearing officer and may make any findings or conclusions that in its judgment are proper and on the basis of the record." *Id.* § 201.411(a). Conversely, if there is no appeal to the Commission, and the Commission declines to exercise its right to review *sua sponte*, the ALJ's initial decision becomes the final decision of the Commission for all purposes. 15 U.S.C. § 78d-1(c). Regardless of whether the initial decision is appealed, the administrative process culminates in a final order of the Commission.

The aggrieved party may then seek review in the United States Court of Appeals either for the circuit in which she resides or has her principal place of business or for the District of Columbia Circuit. 15 U.S.C. § 78y(a)(1). The aggrieved party may request that the Commission stay enforcement of its order pending judicial review. 17 C.F.R. § 201.401. Section 78y then provides a detailed scheme for appellate court review of final Commission orders.

The process of obtaining judicial review begins with the filing of a petition in the court of appeals that triggers the court's jurisdiction. 15 U.S.C. § 78y(a)(1), (3).

3

> Upon the filing of the record in the court of appeals, the court's jurisdiction becomes exclusive. *Id.* § 78y(a)(3). Although other provisions of the Exchange Act provide limited district court jurisdiction over some types of securities-related claims, the Act contains no express authorization for district court review of a final Commission order.
>
> Section 78y then details how the court of appeals reviews a final order of the Commission. The statute grants the reviewing court broad authority "to affirm or modify and enforce or to set aside the [final Commission] order in whole or in part." *Id.* § 78y(a)(3). The reviewing court must accept the Commission's factual findings that are supported by substantial evidence, but, if appropriate, the court may remand to the Commission for additional fact finding. *Id.* § 78y(a)(4)–(5). The statute prohibits the reviewing court from considering a newly-raised objection to a final Commission order unless there was "reasonable ground" for failing to raise the objection first before the Commission. *Id.* § 78y(c)(1). The statute generally authorizes the reviewing court to stay enforcement of the Commission's order pending judicial review "to the extent necessary to prevent irreparable injury." *Id.* § 78y(c)(2).

*Hill v. S.E.C.*, 825 F.3d 1236, 1238–39 (11th Cir. 2016) (footnotes omitted).

When, as here, plaintiffs fail to follow these procedures, federal courts are powerless to hear their claims. "Pursuant to Section 704 of the Administrative Procedure Act, 5 U.S.C. § 704, a petition to the Commission for review of an initial decision is a prerequisite to the seeking of judicial review of a final order entered pursuant to such decision." 17 C.F.R. § 201.410. Moreover, "Section 78y provides only for judicial review of *Commission* action, and not every Board action is encapsulated in a final Commission order or rule." *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 490 (2010) (emphasis in original). And, even if a plaintiff does challenge the (i) final action of (ii) the Commission, he must proceed directly to the Court of Appeals. On this point, 15 U.S.C. § 78y is unambiguous:

> A person aggrieved by a final order of the Commission entered pursuant to this chapter may obtain review of the order in the United States Court of Appeals for the circuit in which he resides or has his principal place of business, or for the District of Columbia Circuit, by filing in such court, within sixty days after the entry of the order, a written petition requesting that the order be modified or set aside in whole or in part.

With these principles in mind, the Court now turns to the facts of this case.

## ANALYSIS

In their Complaint, the Plaintiffs assert three claims against the SEC. *See generally* Compl. [ECF No. 1]. *First*, they allege that they have been denied due process of law because the SEC took more than seven months to process their claims. *See id.* at 7. *Second*, they ask for a permanent injunction that would prevent the SEC—or, for that matter, the ALJ—from enforcing the Second Initial Decision against them. *See id.* at 7–10. *Third*, they ask the Court to dismiss the SEC enforcement action because it has taken too long. *See id.* at 8–9. But the Court can do none of these things because, for the following three reasons, it lacks subject-matter jurisdiction over this case.

*First*, the Plaintiffs have not yet appealed the Second Initial Decision to the Commission. And "a petition to the Commission for review of an initial decision is a prerequisite to the seeking of judicial review of a final order entered pursuant to such decision." 17 C.F.R. § 201.410.

*Second*, the Plaintiffs do not challenge any SEC "final order." As the Eleventh Circuit has explained, once an ALJ enters its initial decision, a plaintiff must appeal that decision to the SEC Commission. *See Hill*, 825 F.3d at 1238. But, "[r]egardless of whether the initial decision is appealed, the administrative process culminates in a final order of the Commission." *Id.* Only that "final order" is reviewable in federal court. *See* 15 U.S.C. § 78y.

*Third*, this Court is not the Eleventh Circuit Court of Appeals. "A person aggrieved by a final order of the Commission entered pursuant to this chapter may obtain review of the order in the United States Court of Appeals for the circuit in which he resides or has his principal place of business." 15 U.S.C. § 78y.

Ultimately, the Plaintiffs "have the right to appeal the [Second Initial Decision]." Compl. at 11; *see also id.* at 6. But, before they may enter a federal courthouse, they must exhaust their administrative remedies. And, once they do, they must file their claim in the Court of Appeals.

For all these reasons, the Court hereby

**ORDERS and ADJUDGES** that the Plaintiffs' Complaint [ECF No. 1] is **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction. The Clerk of Court is directed to **CLOSE** this case. Any pending motions are **DENIED as moot**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 11th day of March 2020.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record